HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEVITTA BRISCOE, individually, and as executor of the Estate of Che Andre Taylor; JOYCE DORSEY, individually; CHE ANDRE TAYLOR, JR., individually; and SARAH SETTLES on behalf of her minor child, ▮, and DEMEKA GREEN for the Estate of Brenda Taylor,

    Plaintiffs,

v.

CITY OF SEATTLE; MICHAEL SPAULDING and "JANE DOE" SPAULDING, and their marital community composed thereof; SCOTT MILLER and "JANE DOE" MILLER, and their marital community composed thereof; TIMOTHY BARNES and "JANE DOE" BARNES, and their marital community composed thereof; and AUDI ACUESTA and "JANE DOE" ACUESTA, and their marital community composed thereof,

    Defendants.

NO. 2:18-cv-00262-TSZ

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF GREGORY GILBERTSON

**Noted for Consideration: April 24, 2020**

Defendants City of Seattle, Michael Spaulding, Scott Miller, Timothy Barnes, and Audi

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 1
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Acuesta submit the following motion to exclude the opinions and testimony of plaintiffs' expert witness, Professor Gregory Gilbertson.

## I. RELIEF REQUESTED

Defendants respectfully request that the Court exclude Prof. Gilbertson's opinions, because they do not satisfy the requirements of Fed. R. Evid. 702. The Court should exercise its gatekeeper function here, because Prof. Gilbertson's anticipated testimony lacks foundation, invades the province of the jury, constitutes legal opinions, and is not relevant.

## II. STATEMENT OF FACTS

Plaintiffs bring this lawsuit alleging defendants unlawfully seized Che Taylor and then used excessive force when they shot him. (Dkt. #64.) The material facts pertinent to this motion are set forth in Defendants' Motion for Summary Judgment, and those facts are incorporated by this reference. (Dkt. #73.) On December 6, 2019, the parties disclosed their Rule 26(a)(2) expert witnesses. (Declaration of Thomas P. Miller, ¶ 3.) Plaintiffs disclosed police practices expert, Prof. Gregory Gilbertson. (*Id*., Ex. A.) Prof. Gilbertson is not rendering any opinions with respect to the sufficiency of the training at the Seattle Police Department. (*Id*.; March 25, 2020, Deposition of Gregory Gilbertson, 6:25-7:4.[1]) Prof. Gilbertson is not a psychologist; he is not a body language expert; he is not a reconstruction expert; and he has no expertise in firearms forensics. (March 16, Deposition of Gregory Gilbertson, 16:6-17:22.[2]) Additionally, Prof.

---

[1] Excerpts from the March 25, 2020 Deposition of Gregory Gilbertson are attached as Exhibit B to the Declaration of Thomas P. Miller.
[2] Excerpts from the March 16, 2020 Deposition of Gregory Gilbertson are attached as Exhibit C to the Declaration of Thomas P. Miller.

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 2
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Gilbertson is not an expert with respect to video interpretation.  (March 25 Dep., 73:12-20.)  Prof. Gilbertson was a police officer in the Atlanta area from 1988 to 1996.  (Miller Decl. Ex. A at p. 2, ¶ 9.)  Prof. Gilbertson intends to offer a slew of opinions at trial, none of which are admissible.  For the convenience of the Court, Defendants have appended to this motion a table that sets forth Prof. Gilbertson's opinions and the various bases for their exclusion.  (Appendix A.)

Undersigned counsel deposed Prof. Gilbertson in another officer-involved shooting case.  In that matter, Prof. Gilbertson testified about his background and qualifications as follows:

- He is not a commissioned law enforcement officer in Washington;
- He has never attended any training classes at the Washington State Criminal Justice Training Commission;
- The last time he had any police powers was just before he retired in 1996;
- In his eight-year law enforcement career, he was never involved in a situation where he or another officer had to use deadly force with a firearm;
- He has never trained a police officer within the territorial United States;
- He has never trained officers on use of force or defensive tactics;
- During his stints in Iraq and Afghanistan, Prof. Gilbertson did not actually conduct any training of the police cadets.  He reviewed the curricula for the trainings.

(February 17, 2017 Deposition of Gregory Gilbertson, 19:17-21:12; 26:21-29:14.[3])

---

[3] Excerpts from the February 17, 2017 Deposition of Gregory Gilbertson in the matter of *Jose German v. Chris Roberts*, USDC for WDWA Cause No. 3:15-cv-05237 are attached as Exhibit D to the Declaration of Thomas P. Miller.

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 3
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

### III. ISSUE PRESENTED

Given the requirements of Fed. R. Evid. 702, should the Court should exclude Prof. Gilbertson's testimony, because his opinions lack foundation, are not the product of reliable principles and methods, invade the province of the jury, and contain impermissible legal conclusions.

### IV. EVIDENCE RELIED UPON

Defendants rely upon the pleadings already on record, as well as the Declaration of Thomas P. Miller with exhibits, filed herewith.

### V. ARGUMENT AND AUTHORITIES

**A.   Federal Rule of Evidence 702 Standard.**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which requires that expert testimony be both relevant and reliable, with the trial judge serving as a gatekeeper to ensure a proffered expert's testimony meets both requirements. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993). The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence, and courts are to use special care in determining whether expert testimony is admissible, because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 592 (1993) (internal citations omitted); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Relevancy "requires that the evidence … logically advance a material aspect of the

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 4
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

party's case." *Estate of Barabin*, 740 F.3d at 463 (internal citations omitted). A court's determination of relevance must also consider the applicable substantive standard of proof. *Schudel v. Ge. Elec. Co.*, 120 F.3d 991, 996 (9th Cir. 1997) (citing *Daubert II*, 43 F.3d at 1320), *abrogated on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440 (2000). Therefore, when the standard of proof is a preponderance of the evidence, which requires the plaintiff to prove his or her claims on a more probable than not basis, testimony suggesting only that something could possibly have happened is irrelevant and inadmissible. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1084 (9th Cir. 2009); *U.S. v Wong*, 2 F.3d 927, 935-36 (9th Cir. 1993); *Schudel*, 120 F.3d at 996; *Dasho v. City of Fed. Way*, 101 F. Supp. 3d 1025, 1035 (W.D. Wash. 2015).

In assessing reliability, courts look to "whether an expert's testimony has a 'reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin*, 740 F.3d at 463 (quoting *Kumho Tire Co., Ltd.,* 526 U.S. at 149 (internal citations omitted). In determining reliability, the court must rule not on the correctness of the expert's conclusions but on the soundness of the methodology and the analytical connection between the data, the methodology, and the expert's conclusions. *Estate of Barabin*, 740 F.3d at 463; *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). For a multitude of reasons, Prof. Gilbertson's "opinions" do not meet these standards, as he disregards undisputed evidence and cannot support his opinions with anything but his own "training and experience' as a police officer. That short-lived training and experience ended in 1996.

**B.  Prof. Gilbertson's Opinions Lacks Foundation and Reliable Methodology.**

Prof. Gilbertson's report is replete with opinions that lack foundation, are irrelevant and

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 5
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

not the product of reliable methodology. For example, under the guise of expert opinion, Prof. Gilbertson "takes exception to" a number of facts to which the officers unequivocally testified and which no witness refutes. He disregards undisputed testimony that Officer Miller saw a gun on Taylor's right hip when he exited his car a little over an hour before the shooting, and that the officers saw Taylor reach for that gun with his right arm as they moved in to arrest him. In the face of this testimony, Prof. Gilbertson, weighing in on the officers' credibility and telling the jury how to view the evidence, opines that there is no physical evidence that proves Taylor was in physical possession of the gun. He gives this opinion despite photographs of the gun and holster and unrefuted witness reports that Taylor had a gun. He also strongly implies that the holster found on Taylor could have been planted there, an opinion that clearly exceeds the bounds of permissible testimony. In so opining, Prof. Gilbertson ignores testimonial evidence, opines on the credibility of the officers, speaks in terms of possibility, not probability, and concludes that Taylor was not armed when he was shot. This is not expert testimony based upon a reliable methodology; this is Prof. Gilbertson standing in the shoes of a jury and drawing his own conclusions.

Prof. Gilbertson also lacks foundation and expertise to opine on the officers' purported failure to carry less lethal tools. Prof. Gilbertson has never deployed a Taser, received Taser training, or seen a Taser deployed in real life. (March 25 Dep., 73:21-76:3.) He also has never used or seen a 40 mm less lethal launcher be used and "does not pretend to be an expert" on that tool. (*Id.*, 76:7-80:12.) Yet, he opines that the officers were reckless in their failure to carry these items. Given his lack of experience, training, and expertise with these tools or when and

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 6
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

how they are appropriately deployed, the Court should not permit him to testify about them.

Similarly, despite conceding that he is not an expert in forensics, accident reconstruction, or video interpretation, Prof. Gilbertson renders numerous opinions on those topics – e.g., how the position of the gun rules out the possibility that Taylor had been in possession of it, what the video shows Taylor doing, and how the officers' body positions would have obscured Taylor's view of their police logos. He has no expertise or foundation to render these gratuitous opinions. The same can be said for Prof. Gilbertson's opinion that the arresting officers should have been in marked cars and patrol uniforms, because that lessens the need for force. Though he asserts it as a scholarly opinion borne of research, it is based on nothing more than his own nebulous "training and experience." (March 25 Dep., 70:21-73:8.) The Court should exclude all of Prof. Gilbertson's unfounded opinions.

**C.     Prof. Gilbertson Renders Inadmissible Legal Conclusions.**

For non-scientific experts, courts focus primarily on the knowledge and experience of the expert. *Hangerter v. Povident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *Kumho Tire Co., Ltd.*, 526 U.S. at 151. "[W]here qualified to do so, and where testimony is otherwise relevant, experts may testify as to nationally accepted standards of police conduct…" *See e.g., Paine ex. Rel. Eilman v. Johnson*, 06-CV-3173, 2010 WL 785394, at *2 (N.D. Ill. 2010). To the contrary, however, police practices expert may not offer any opinion that goes beyond explaining the industry standards relevant to the case and whether officer conduct comports with those standards. *Morales v. Fry*, C12-2235-JCC, 2014 WL 12042563, at *3 (W.D. Wash. 2014) (citing *Hygh v. Jacobs*, 961 F.2d 359, 364 2d Cir. 1992). In other words, police practices experts

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 7
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

should not indicate, in any way, whether any conduct was reasonable under the circumstances, objectively reasonable, or justified. *Id*.

As this Court held in another excessive force case, "[a]lthough the Federal Rules of Evidence do not preclude an expert from opining about an ultimate issue, *see* Fed. R. Evid. 704(a), the Court may bar such testimony when it is not helpful to the jury, *see* Fed. R. Evid. 702(a), or when it might be unduly prejudicial, *see* Fed. R. Evid. 403." *Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cty.*, C18-55 TSZ, 2019 WL 2289681, at *1 (W.D. Wash. May 29, 2019) (*citing United States v. Diaz*, 876 F.3d 1194, 1196-97 (9th Cir. 2017); *see also United States v. Schatzle*, 901 F.2d 252, 257 (2d Cir. 1990); *Falk v. Clarke*, 1990 WL 43581 at *5 (N.D. Ill. Apr. 3, 1990). Expert or lay testimony providing a conclusion as to whether the individual officers acted reasonably or with excessive force is improper. *Bao Xuyen L*e, 2019 WL 2289681, at *1; *Halsted v. City of Portland*, 3:10-CV-00619-AC, 2012 WL 13054271, at *2 (D. Or. Mar. 7, 2012). Simply, "[p]olice practices experts may testify as to law enforcement standards and procedures and whether the officers' actions comported with such standards and procedures. Police practices experts may not testify whether the officers' actions were 'reasonable' or 'excessive' because those are ultimate issues left to the trier of fact." *Silva v. Chung,* No. CV 15-00436 HG-KJM, 2020 WL 515810, at *18 (D. Haw. Jan. 31, 2020).

Prof. Gilbertson's opinion that there were no exigent circumstances to justify immediate apprehension of Taylor is a legal conclusion, albeit an incorrect one, as it implies there must be exigency to make a warrantless arrest for a felony committed in an officer's presence. At deposition, he admitted the officers did *not* need exigent circumstances. (March 25 Dep., 54:8-

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 8
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

57:6.) Any opinion that the officers lacked exigency and, therefore, should not have arrested Taylor is an impermissible legal conclusion. This opinion is especially harmful since it is contrary to well-settled law and statutory authority. RCW 10.31.100; *Atwater v. Lago Vista,* 532 U.S. 318, 354 (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"); *United States v. Watson,* 423 U.S. 411, 424 (1976).

Prof. Gilbertson also opined at deposition that officers must have a "very high degree of certainty that a person was not only armed…and actually has to have the weapon in their hand…[n]ot just in their hand but to be raising it or point it in the direction of the officer" in order to justify the use of deadly force. (March 25 Dep., 37:13-39:14.) However, Mr. Gilbertson cannot identify any literature, treatise, or training materials that set forth that standard. (*Id.*) Indeed, that standard is contrary to well-settled law. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). Prof. Gilbertson concludes his report with the inadmissible legal conclusion that the officers used excessive force. This opinion goes beyond the bounds of proper expert testimony and, as a result, is a legal conclusion that invades the province of the jury. The Court should exclude Prof. Gilbertson's legal opinions.

**D.     Prof. Gilbertson Invades the Province of the Jury.**

Expert witness testimony is proper under Rule 702 only if it illuminates matters not within the common knowledge of the average juror. *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). If the issues in the case are ones that jurors can understand and evaluate through their own knowledge and experience, expert testimony is not needed and should be

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 9
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

excluded. *Salam v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). Expert testimony may be properly excluded if all the primary facts can be accurately and intelligently described to the jury, and if the jury are just as capable of comprehending the primary facts and drawing correct conclusions as the witnesses who possess special or peculiar training, experience, or observation in respect of the subject under investigation. *Id*. In evaluating expert testimony,

> [t]rial courts have also considered whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion," "whether the expert has adequately accounted for obvious alternative explanations," "whether the expert is being as careful as he would be in his regular professional work," and "whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion offered."

*Prest v. Jermstad*, No. 07-cv-1771, 2009 WL 3634114 (S.D. Cal. Oct. 30, 2009) (internal citations omitted). Additionally, the court should not find a non-scientific expert reliable based solely on the *ipse dixit* of the expert; instead, the expert should clearly explain how they used their knowledge and experience to form their conclusions:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512 (1997). (internal citation omitted); *see also Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir.2002) (affirming the exclusion of the *ipse dixit* testimony of plaintiff's expert that was not based upon objective, verifiable evidence). "Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective belief." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir.1997) (*citing*

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 10
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

*Daubert*, 509 U.S. at 590).

The bulk of Prof. Gilbertson's opinions do not pass muster under the above-referenced line of cases. For example, Prof. Gilbertson conceded he has not seen any evidence that Officer Scott Miller could not see a gun on Che Taylor's right hip when Che Taylor exited the car. (March 25 Dep., 20:4-25.) Professor Gilbertson then conceded that whether or not Officer Miller could, in fact, see a gun on Che Taylor's hip is not an issue for him to decide. (*Id.*, 22:19-24:9.) Additionally, at deposition, Professor Gilbertson conceded he does not know what Taylor was or was not thinking during the incident, nor could he. (March 25 Dep., 95:23-96:7.) Indeed, Prof. Gilbertson goes so far as to accuse Officer Spaulding of making false statements, because Officer Spaulding told investigators that he and Officer Miller knew Taylor to be armed. This goes far beyond admissible expert testimony. Despite the contents of his report, Mr. Gilbertson conceded that it is not the job of a police practices expert to opine on witness credibility. (March 25 Dep., 15:6-18.)

Prof. Gilbertson opines that Officers Spaulding and Miller should have been in a marked car and full police uniform, because, based on his experience and training, there are less uses of force when police make arrests in uniform. (Miller Decl., Ex. A, p. 8.) At deposition, Prof. Gilbertson conceded that opinion is not based on any treatises or studies he reviewed, it is based solely on his own experience and training. (March 25 Dep., 70:21-73:8.) This is the exact type of *ipse dixit* testimony that is not allowed. Given how many years it has been since Prof. Gilbertson attended any police training, this opinion lacks any semblance of reliable foundation and has the potential to carry undue weight with the jury due to Prof.

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 11
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Gilbertson's stature as an "expert."  Prof. Gilbertson's opinion that the officers gave inconsistent commands that made it impossible for Taylor to comply not only ventures into the realm of omnipotent mind-reading, it is also pure *ipse dixit*.  Again, Prof. Gilbertson bases his opinion that it is "best practice" for one officer to give commands only on his own training and experience, both of which ceased in 1996.  (March 25 Dep., 88:6-89:18.)  Prof. Gilbertson's deposition testimony illustrates his lack of understanding of his role as an expert.  (March 25 Dep., 102:10-103:20).  He claims that his "analysis" and "opinions" are based on his personal training and experience (*Id.*) but fails universally to highlight what aspect of that training and experience is applicable to the case at hand.  The Court should exclude all of Prof. Gilbertson's unfounded, *ipse dixit* opinions.

The Court should also exclude Prof. Gilbertson's opinions about what the in-car video shows or does not show.  As discussed above, he is not an expert on video interpretation or accident reconstruction.  From the stance of a police practices expert, he is simply telling the jury how to interpret and view the evidence, and what the evidence shows or does not show.  The jury can evaluate the video evidence for itself.  It does not need Prof. Gilbertson's unqualified opinions to assist it.

## VI. CONCLUSION

Prof. Gilbertson's opinions on this incident are not reliable, relevant, or admissible.  He wades into waters in which no expert should be permitted to swim – he renders legal conclusions, exceeds the bounds of his purported expertise, interprets the evidence, weighs

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 12
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

witness credibility, and offers opinions that are not the result of any reliable methodology. The Court should exclude his opinions, both at summary judgment and at trial.

DATED this 9th day of April, 2020.

PETER S. HOLMES
Seattle City Attorney

By: *s/ Ghazal Sharifi*
Ghazal Sharifi, WSBA# 47750
Susan Park, WSBA #53857
Assistant City Attorneys
E-Mail: Ghazal.Sharifi@seattle.gov
E-Mail: Susan.Park@seattle.gov

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone: (206) 684-8200

*Attorneys for Defendants*

By *s/ Thomas P. Miller*
Thomas Miller, WSBA #34473
CHRISTIE LAW GROUP
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
Phone: 206-957-9669
Email: tom@christielawgroup.com

*Attorneys for Defendants*

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 13
(2:18-cv-00262-TSZ)

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of April, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jesse Valdez, WSBA #35378
VALDEZ LEHMAN, PLLC
14205 SE 36th St., Suite 100
Bellevue, WA 98006
Phone: 425-458-4415
Email: jesse@valdezlehman.com
*Attorney for Plaintiffs*

Shakespear N. Feyissa, WSBA #33747
LAW OFFICES OF SHAKESPEAR N. FEYISSA
1001 Fourth Avenue, Suite 3200
Seattle, WA 98154-1003
Phone: 206-292-1246
Email: shakespear@shakespearlaw.com
*Attorney for Plaintiffs*

James Bible, WSBA #33985
JAMES BIBLE LAW GROUP
14205 SE 36th St., Suite 100
Bellevue, WA 98006-1553
Phone: 425-748-4585
Email: james@biblelawgroup.com
*Attorney for Plaintiffs*

Ghazal Sharifi, WSBA #47750
Susan E. Park, WSBA #53857
SEATTLE CITY ATTORNEY'S OFFICE
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
Phone: 206-233-7808
Email: ghazal.sharifi@seattle.gov; susan.park@seattle.gov
*Attorneys for Defendants*

/ / /
/ / /

DEFENDANTS' MOTION TO EXCLUDE
OPINIONS OF GREGORY GILBERTSON - 14
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1                                                       CHRISTIE LAW GROUP, PLLC

By \_\_\_\_/s/ Thomas P. Miller_____
    THOMAS P. MILLER
    Attorney for Defendants
    2100 Westlake Avenue N., Suite 206
    Seattle, WA 98109
    Phone: 206-957-9669
    Email: tom@christielawgroup.com

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF GREGORY GILBERTSON - 15
(2:18-cv-00262-TSZ)

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

# APPENDIX A

Appendix A – Motion to Exclude Opinions of Gregory Gilbertson
Table of Prof. Gilbertson's Opinions and Bases For Exclusion
*Devita Briscoe, et al. v. City of Seattle, et al.* – 2:18-cv-00262-TSZ

| Opinion | Lack of Foundation/ No Expertise | No Reliable Methodology/ *Ipse dixit* | Legal Conclusion | Invades Province of Jury |
|---|---|---|---|---|
| He does not know whether Officer Scott Miller had an unobstructed view of Che Taylor as he exited the vehicle. (Miller Decl., Ex. A, p. 4.) | X | X | | X |
| He "takes exception" to statements in the Force Investigation Report that both officers believed that Taylor was reaching for and drawing a firearm on his right hip. (Miller Decl., Ex. A, p. 4.) | X | X | | X |
| Because Officer Spaulding did not actually see the gun on Che Taylor's hip prior to the encounter, he shot Che Taylor based solely on the hearsay statement of Officer Miller that Taylor was armed. (*Id*. at 5.) | X | X | | X |
| A photo of the gun retrieved from the car after the shooting "clearly shows the weapon was positioned in a manner whereby someone could retrieve it quickly." (Miller Decl., Ex. A, p. 5.) | X | X | | X |
| It is highly unlikely that Taylor would ever possess a gun that had been owned by a police officer. (*Id*. at 5-6.) | X | X | | X |
| Because the holster detectives found on Taylor could be removed without undoing a belt, it could also be attached without undoing a belt. (*Id*. at 6-7.) | X | X | | X |
| Officer Spaulding gave a "false statement" that he knew Taylor was armed, because he did not see the gun for himself prior to the encounter. (*Id*. at 7.) | X | X | | X |
| "The fact remains Taylor did not have physical possession of the gun when he was shot and killed by Spaulding and Miller." And the gun was found in a position that is inconsistent with the premise that Taylor placed it there. (*Id*.) | X | X | | X |
| There were no exigent circumstances that required the officers to arrest Taylor. (*Id*.) | | | X | X |
| There was an insufficient number of officers present to arrest Taylor. (*Id*. at 7-8.) | X | X | | |
| Prof. Gilbertson is "troubled and confused" by the fact that Officers Miller and Spaulding did not possess less-lethal weapons. It was "reckless conduct." (*Id*. at 8.) | X | X | | X |
| Prof. Gilbertson is "troubled and confused" by the fact that Officers Spaulding and Miller, who were in plain clothes, led the arrest team. Further, based on his "education, training, and experience," leading | X | X | | X |

Appendix A – Motion to Exclude Opinions of Gregory Gilbertson
Table of Prof. Gilbertson's Opinions and Bases For Exclusion
*Devita Briscoe, et al. v. City of Seattle, et al.* – 2:18-cv-00262-TSZ

| Opinion | | | | |
|---|---|---|---|---|
| apprehensions and arrests with uniformed officers in marked cars diminishes the necessity for force in most cases. (*Id*.) | | | | |
| Che Taylor may have believed he was being assaulted by two armed men robbing him of the $2,000 in cash claimed to be on his person. It is Prof. Gilbertson's opinion that it is "reasonable to infer" that anyone would have been "confused and overwhelmed" by the rapidly evolving circumstances that Taylor experienced just prior to being shot. (*Id*.) | X | X | | X |
| A review of the in-car video of the incident "clearly suggests" Taylor was "attempting to comply with multiple officer commands." (*Id*. at 9.) | X | X | | X |
| The in-car video is "troubling in many respects," in that it does not capture verbal exchanges that Officers Miller and Spaulding claim to have had with Taylor. (*Id*.) | X | X | | X |
| The officers' positioning "appears in the video to obscure" the officers' police markings on their clothing and equipment. It is "entirely possible Taylor never saw these visual police representations…" (*Id*.) | X | X | | X |
| The officers shouted contradictory commands and it is "impossible" for anyone to perfectly comply with contradictory commands being simultaneously shouted by multiple officers…" especially when someone is placed under the added stress of having firearms pointed at him. (*Id*. at 9-10.) | X | X | | X |
| Only one officer should have been shouting commands at Taylor. (*Id*. at 10.) | X | X | | |
| The officers were "pre-disposed to deploy deadly force against Taylor…" (*Id*.) | X | X | | |
| "No evidence exists which proves [the officers] verbally identified themselves as police officers while attempting to apprehend Taylor." (*Id*.) | X | X | | |
| Based on Prof. Gilbertson's review of the video and audio, it appears Taylor was attempting to comply with numerous and conflicting commands. (*Id*. at 11.) | X | X | | X |
| Prof. Gilbertson has "seen no forensic or physical evidence that proves Che Taylor possessed" the gun. (*Id*.) | X | X | | X |
| The officers' arrest tactics were amateurish, haphazard, and reckless, and "directly linked to his untimely and unnecessary death." (*Id*.) | X | X | X | X |
| The force the officers used against Taylor was excessive. (*Id*.) | X | X | X | X |